UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JOHN  M. LACNY                         CIVIL ACTION NO. 11-cv-0405

VERSUS                                 JUDGE HICKS

CHESAPEAKE ENERGY CORP., ET AL    MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

**Introduction**

John M. Lacny ("Plaintiff") filed suit in a DeSoto Parish state court in an attempt to
recover for damages caused to his home, improvements, and land after a natural gas well
located near his property exploded.  Plaintiff named as defendants Chesapeake Energy
Corporation, Chesapeake Energy Louisiana Corporation, and Honeycutt Hill Corporation.
He alleged, without specificity, that the "defendants" were responsible for the damages
because they negligently operated the well.[1]

The Chesapeake entities, both of whom are incorporated in Oklahoma and have their
principal places of business in that state, removed the case based on diversity of citizenship

---

[1] Plaintiff's petition named as defendants Chesapeake Energy Corporation and
Chesapeake Energy Louisiana Corporation.  Defendants' Memorandum (Doc. 9)
represents at footnote 5 that neither of those named defendants leased, owned, or operated
the well or land at issue. Rather, the opposition represents, Chesapeake Operating, Inc.
was the sole operator of the well, and Chesapeake Louisiana, LP participated as the lessee
and a working interest owner.  As the court noted in an earlier ruling, Plaintiff should
immediately research whether he has named the correct defendant(s) and seek leave to
file any necessary amendments in this regard.

between them and the Plaintiff, who is a Louisiana citizen.   The Chesapeake entities conceded that defendant Honeycutt is, like Plaintiff,  a Louisiana citizen. They argued that Honeycutt's non-diverse citizenship should be ignored under the improper joinder doctrine because Honeycutt had no interest in the well or its operation.

Plaintiff filed a Motion to Remand (Doc. 5) that challenged the improper joinder plea. The court denied the motion. Doc. 10. Plaintiff then filed a Motion for Reconsideration (Doc. 11) that is now before the court. For the reasons that follow, that motion will also be denied.

**Improper Joinder**

Congress has provided a statutory framework for removal of certain cases where there is diversity of citizenship.  Those statutes have been interpreted by the courts to require complete diversity; jurisdiction is lacking if any defendant is a citizen of the same state as any plaintiff.  That strict requirement would, on its face, permit a plaintiff to name as a defendant any citizen of his home state and defeat removal.  To prevent such shams, the "judge-imported concept of fraudulent joinder" has developed.  Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968).  The Fifth Circuit has since adopted the term "improper joinder" to describe the doctrine, but there is no substantive difference between the two terms.  Smallwood v. Illinois Central R.R. Co., 385 F.3d 568 n. 1 (5th Cir. 2004) (en banc).

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the

non-diverse party in state court.  Only the second way is at issue in this case.  That second test asks whether the defendant has demonstrated there is no reasonable basis for the district court to predict the plaintiff might be able to recover against the in-state defendant. Smallwood, 385 F.3d at 573; Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003).

The "no reasonable basis" contest may take place in two different settings. In the first, the defendant challenges the adequacy of the plaintiff's pleadings, without the submission of evidence. The court conducts a Rule 12(b)(6)-type analysis to determine whether the complaint states a claim under state law against the in-state defendant.  Smallwood, 385 F.3d at 573.   Any ambiguities in state law must be resolved in favor of the plaintiff.   Gray v. Beverly Enterprises-Mississippi, Inc., 390 F.3d 400, 405 (5th Cir. 2004).

But merely pleading a valid state law claim, or one whose validity is reasonably arguable, against the resident defendant does not necessarily mean that the joinder of the resident defendant is proper.  The second setting for the "no reasonable basis" contest permits the defendant to challenge the plaintiff's allegations and attempt to demonstrate by summary judgment-type evidence that the plaintiff is unable to prove all of the facts necessary to prevail.  The court has discretion in those circumstance to pierce the pleadings and analyze the improper joinder claim based on that evidence.  Hornbuckle v. State Farm Lloyds, 385 F.3d 538, 542 (5th Cir. 2004).

**Analysis**

    **A. Owner/Operator of the Blowout Well**

    Plaintiff's petition lumps Honeycutt among the "defendants" that Plaintiff alleges are liable for negligent operation of the well and resulting damage to Plaintiff's property.  The improper joinder plea with respect to Honeycutt is not, therefore, susceptible to a simple Rule 12(b)(6) type attack.  Defendants did challenge the facts alleged in the petition by representing in their notice of removal that uncontroverted evidence would show that Honeycutt did not own, operate, or lease the well in question, nor did it have any interest in the well or the land adjacent to Plaintiff's property at the time of the blowout.  Defendants did not, however, attach any affidavits or other documentation to their notice of removal to back this challenge.

    Plaintiff responded to the removal by filing his motion to remand. He asserted in the motion that his claims lie in both tort and contract, and that he has a contract with Honeycutt. Plaintiff attached a mineral lease between himself and Honeycutt for a tract of land in Township 13 North, Range 14 West, <u>Section 24</u>. (As explained below, evidence shows that the blowout well was in <u>Section 25</u> on land not leased by Honeycutt.) Plaintiff's memorandum did not contend that the blowout well was on the Honeycutt leased premises or otherwise articulate how the lease gives rise to a claim against Honeycutt for breach of contract.  He did make a reference to an indemnity and hold harmless clause in paragraph

27(D) of the Honeycutt lease, but he did not explain how it would apply to give rise to liability under the relevant facts.

The Chesapeake entities filed a memorandum in opposition that is supported by the affidavit of Brad Kemp, a land manager at Chesapeake Louisiana, LP and custodian of Chesapeake's records regarding its operations in the Haynesville Shale.  Plaintiff's petition did not identify the particular section on which the exploded well was located, but the Chesapeake entities represented in their notice of removal that the well at issue was the Sumner 25-13-14 H-1, and Mr. Kemp directed his testimony to the operations in the same Section 25 referenced in the name of the well.

Mr. Kemp testified that Demetrius Sumner executed a mineral lease in 2008 in favor of Suncoast Land Services, Inc. with regard to Mr. Sumner's mineral interests in his tract of land located in Section 25.  Suncoast assigned the lease to Chesapeake, Louisiana, LP, which designated Chesapeake Operating, Inc. as operator for a Section 25 well. Chesapeake Operating obtained a drilling permit for the well, which was called the Sumner 25-13-14 H-1, located in Section 25. Chesapeake Operating was the sole operator of the well during all drilling and completion operations. Mr. Kemp testified as to the identity of the several working interest owners in the well, and Honeycutt is not among them.  Mr. Kemp concluded by stating affirmatively that Honeycutt had no operational, lease, or ownership interest in the well or the land on which it is situated in Section 25. The lease between Plaintiff and

Honeycutt, a portion of which is attached to Plaintiff's motion to remand, regards property located in Section 24, which is not the section in which the subject well is located.

The Chesapeake entities, therefore, pierced the petition with summary-judgment type evidence that squarely challenged the assertion that Honeycutt had any connection to the subject well.  The lease Plaintiff  attached to his motion showed only that Plaintiff leased property to Honeycutt that is located near the subject well.  Plaintiff did not articulate a colorable cause of action against Honeycutt under the relevant facts that would provide a reasonable possibility that Plaintiff could recover from Honeycutt.  Accordingly, the court found that the Chesapeake entities had met their burden of establishing improper joinder, and Plaintiff's motion to remand was denied.

### B. Grant of Right of Access

Plaintiff's counsel stated near the end of his Memorandum in Support of the Motion to Remand that he would be recuperating from medically necessary surgery "for the next three weeks," so he might not be able to timely respond to briefing schedules during that time.  That memorandum was filed on April 13, 2011.  The court's Memorandum Ruling, filed six weeks later on May 26, 2011 (ten days after a reply was due), stated that Plaintiff had not used his opportunity to file a reply brief and respond to the evidence submitted by the Chesapeake entities that indicated Honeycutt had no connection to the subject well. Counsel represents in his Motion to Reconsider that the surgery, which was quite serious,

actually required a more lengthy recuperation period than anticipated, which prevented Plaintiff from responding to the evidence before the ruling issued.

Plaintiff's Motion to Reconsider has afforded him a full opportunity to respond to the Chesapeake entities' affidavit. The motion has generated five briefs, three by Plaintiff, ending with Plaintiff's Reply to Sur-Reply, but Plaintiff did not submit any additional evidence. He did attempt to better articulate the basis for his claim against Honeycutt.

Plaintiff first argues as follows:

> Plaintiff is now responding to the specific issue of the location of the well in question, and avers that access to Section 25 (the well location), is <u>only granted to defendants</u> through the access granted over plaintiff's property, through Section 24, which is extremely close to Section 25, a matter of a few feet only. Further, all production from the well located in Section 25, must of necessity traverse plaintiff's property in section 24 in order to get to market. <u>All defendants access to the well in question in Section 25, is completely dependent upon access over plaintiff's land in Section 24</u>. Therefore, the indemnity clause that plaintiff holds with defendant Honeycutt Hill Corporation, (a Louisiana corporation), is still fully operable under these facts. But for the plaintiff's lease with Honeycutt Hill Corporation, there would be no well in existence owned or operated by the defendants-and no well blow out-and no consequent contamination of plaintiff's property. (Emphasis in original.)

Memorandum in Support of Motion to Reconsider at Doc. 11, p. 3. Plaintiff's counsel does not say it directly in this passage, but he strongly implied that it was Honeycutt who granted the other defendants access across Section 24 to reach the Section 25 well. Counsel did write elsewhere that indemnity provisions in the Honeycutt lease should "cover damages to plaintiff's property arising out of Honeycutt's grant of right of way access to the other defendants, as a condition precedent for the exploding oil well to exist at all." Reply at Doc.

15, p. 2. Plaintiff did not submit affidavit testimony, a document, or other evidence that Honeycutt granted anyone a right of access across Section 24, nor did Plaintiff  submit evidence to otherwise back his counsel's general assertion that there could be no well on Section 25 but for Plaintiff's lease with Honeycutt on Section 24.

Defendants, on the other hand, responded with relevant evidence.  They filed a copy of a Surface and Subsurface Agreement in which *Plaintiff* stated a desire to grant Chesapeake Operating, Inc. (the operator of the Section 25 well) a number of rights, including an easement for ingress and egress related to drilling and operations on Section 24, the right to construct pipelines, as well as "an easement for an access road with the right of ingress and egress to other adjacent lands and other Sections ... ."  The agreement went on to specifically permit Chesapeake to use a certain amount of acreage to build a "roadway for ingress and egress to the Well(s) and adjacent lands, and easements for pipelines and utilities." Doc. 14, Exhibit A.  Plaintiff has since filed a Reply and a Reply to Sur-Reply, but he has not contested this evidence or explained his counsel's prior suggestion that Honeycutt granted the Section 25 well operator its right of access across Section 24 to reach the Section 25 well.

**C. Indemnity Provisions**

Plaintiff alleged in his petition that Honeycutt actually operated the well that blew out, but defendants submitted uncontested evidence to the contrary. Plaintiff then changed his theory to Honeycutt being responsible because it granted access across Section 24 to the operators of the Section 25 well, but he was met again with uncontested evidence to the

contrary. Plaintiff's final stand is that indemnity and hold harmless provisions in the Honeycutt Section 24 lease make Honeycutt responsible for damage to the Section 24 property even though Honeycutt had nothing to do with the Section 25 well that caused the damage. Plaintiff says Honeycutt made a bad bargain and agreed to broad language in Section 27(D) and Section 27(E) of its lease that obligates Honeycutt to indemnify Plaintiff for any environmental damages to Section 24, without any qualifications or limitations.

The record contains a portion of the Honeycutt lease, attached to the Motion to Remand (Doc. 5) as Exhibit A. The available provisions state that the lease relates to 39.62 acres in Section 24. Plaintiff has plucked language from Paragraph 27 and presented it as giving rise to an extraordinarily broad hold harmless obligation on the part of Honeycutt. A review of the entire provision puts this language in context and narrows it considerably. Paragraph 27 provides, in relevant part, as follows:

> 27. Surface Operations. Lessee [Honeycutt] hereby agrees that there shall be no drilling operations conducted on the surface of the Leased Premises without the written consent of Lessor [Plaintiff], which shall not be unreasonably withheld. If any surface operations are conducted upon the Leased Premises then:
>
>> A. [Honeycutt will use only as much of the surface of the Leased Premises as necessary and restore it to its original condition.]
>>
>> B. [No well will be drilled within 500 feet of any barn or house.]
>>
>> C. [Honeycutt will comply with notice and compensation provisions for removal of any timber from the leased premises.]

D.  Lessee shall be responsible for all damage to property and injury to persons, including death, by reason of, or in connection with its operations hereunder, and does hereby agree to protect, save harmless, and indemnify Lessor from and against any and all claims and liabilities for damages to property and injuries, including death, to persons, including, but not limited to, Lessee's employees, agents, and contractors, such damages and injuries **arising out of, or in connection with Lessee's operations** hereunder ... .

E.  Lessee shall conduct its operations on the Leased Premises in compliance with all environmental laws and regulations ... . Lessee agrees that the Leased Premises will be kept free from any environmental damage, other than surface damages caused by customary oil and gas operations conducted in a reasonable and prudent manner, including the presence of any hazardous materials or hazardous substances (as said hazardous materials and hazardous substances are defined under federal and state laws), **arising out of or resulting from the Lessee's operations** on the Leased Premises.  In the event the **operations of Lessee** on the Leased Premises results (sic) in a loss or damage to the Lessor and/or the presence of hazardous materials and hazardous substances placed on the Leased Premises by Lessee, its employees, or subcontractors, Lessee agrees to hold harmless and indemnify the Lessor for any loss or damage suffered by Lessor ... . [Bold added.]

Plaintiff acknowledges in his reply brief that Paragraph 27(D) makes Honeycutt responsible for damages to the property only "in connection with its operations hereunder." Plaintiff argues that this language is broad enough to cover damages to his property "arising out of Honeycutt's grant of right of way access to the other defendants, as a condition precedent for the exploding oil well to exist at all."  Plaintiff does not, however, point to any evidence that Honeycutt granted the Chesapeake entities a right of way across Section 24,

and Plaintiff does not respond to the evidence that *he* granted Chesapeake a right of way across Section 24.  The Chesapeake entities have met their burden on this issue.

Plaintiff next argues that Paragraph 27(E) puts Honeycutt directly "on the hook" for environmental damage to his Section 24 property because Honeycutt agreed that the leased premises "will be kept free from any environmental damage ... ." Plaintiff maintains in his Reply to Sur-Reply that Paragraph 27(E) "says broadly that Honeycutt must indemnify the plaintiff for damages to his land, period." Plaintiff charges Defendants with ignoring this indemnity provision, but Plaintiff ignores that the sentence he quotes in part continues and includes the qualifier that the damage be "arising out of or resulting from the Lessee's operations on the Leased Premises." Furthermore, all of the provisions of Paragraph 27 are conditioned by the provision in the opening paragraph: "If any surface operations are conducted on the Leased Premises then ...."

Plaintiff did not allege in his petition or point to evidence in his briefing that Honeycutt engaged in surface operations on Section 24 that caused damage to that property. Plaintiff's counsel has made an unsubstantiated assertion in a memorandum that Honeycutt granted a right of way to the Chesapeake entities, but that is insufficient. The court must decide this motion contest on the facts alleged in the petition  and the summary-judgment type evidence submitted by the parties. Despite ample opportunity, Plaintiff has not submitted any evidence that Honeycutt granted a right of way across the Section 24 tract to Chesapeake or anyone else.

Plaintiff, in his Reply to Sur-Reply, points to language in Paragraph 27(E) that the environmental indemnification "shall include, but not be limited to, any and all judgments or penalties to recover the cost of cleanup of any such release of hazardous materials or hazardous substances by Lessee, its employees, agents, and subcontractors from or upon the Leased Premises ... ."   Plaintiff argues that there are "various contractual relationships" between the Chesapeake entities and Honeycutt so that the Chesapeake entities "can arguably be considered" as "subcontractors" to Honeycutt or that the parties are in a principal/agent relationship.  Once again, however, Plaintiff does not identify a single agreement or submit a shred of evidence to support this contention. Such pure speculation by counsel does not create a reasonable basis to predict that Plaintiff might be able to recover against Honeycutt. Furthermore, there is no allegation or evidence that any agency or person has obtained a judgment or imposed a penalty to recover the cost of a cleanup.

**Conclusion**

Plaintiff has now had a full and fair opportunity to respond to the improper joinder argument with respect to Honeycutt. The court remains persuaded that the removing defendants have met their burden of demonstrating that there is no reasonable basis for this court to predict that Plaintiff might be able to recover against Honeycutt for the claims asserted in this action.  Accordingly, the improper joinder plea has withstood challenge, and the **Motion to Reconsider (Doc. 11)** is **denied**.

Plaintiff 's counsel stated in the Motion to Reconsider, filed June 6, 2011, that his client had informed him of "several other contracts" that he signed with "possible Chesapeake entities, which may very well also be pertinent to this matter." Counsel represented that  Plaintiff was then out of the country and without access to his records, but Plaintiff would be home "soon" and might then wish to propose a supplement to the motion. It has been approximately six weeks since, and Plaintiff has not proposed any supplement or sought an extension of time to do so. Plaintiff, having filed four briefs on the remand issue over the course of three months, has received ample opportunity to be heard on the issue. Sandbagging is heavily discouraged, as it causes a huge waste of time for the court, so Plaintiff  will not hereafter be allowed to file any supplemental materials on this issue absent a showing of extraordinarily good cause.

Plaintiff states in bold text at the conclusion of his Reply to Sur-Reply that the result he advocates "is inescapable here, and it is simply intellectually disingenuous and manifestly erroneous to conclude otherwise" than that the case should be remanded.  Plaintiff, through this and other strong language, has indicated the depth of his conviction about the issue. But strong language, accented by underlining and bold text, is not enough.  If Plaintiff remains certain of the correctness of his position, he may appeal this decision to Judge Hicks within the 14 day period permitted by the rules.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of August, 2011.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE